UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| April Maria Kay, | ) | C/A No. 5:13-909-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties'

submissions and the applicable law, the court *reverses* the Commissioner's decision and *remands*

it for further administrative proceedings, as discussed herein.

I.      Relevant Background

    A.      Procedural History

Plaintiff applied for DIB and SSI on February 25, 2010, pursuant to Titles II and XVI of the

Act, 42 U.S.C. §§ 401-403, and 380-83, *et seq.*, alleging she became disabled on June 10, 2009. Tr.

97-113.[1] In her form disability report, Plaintiff indicated she became unable to work because of her

_____

[1] Plaintiff had previously filed and unsuccessfully pursued a DIB claim, but did not seek an review of the Agency's denial of that claim. The record of the previous claim is located in the official record of this case at Tr. 66-81.

medical conditions which included Arnold-Chiari malformation,[2] depression, chronic anxiety, migraines, and abnormal period. Tr. 138, 184. Her applications were denied initially and upon reconsideration. Tr. 62-69. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 91-93, which was held in Greenville, South Carolina on August 23, 2011. Tr. 35-65. In a decision dated October 13,  2011, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Tr. 19-28. The Appeals Council denied Plaintiff's request for review on March 26, 2013, making the ALJ's decision the final decision for purposes of judicial review. Tr. 1-4. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on April 5, 2013. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born on April 26, 1973. Tr. 41. At the time of the hearing she was thirty-eight years old, married, and lived with her husband and her two children aged seventeen and thirteen. Tr. 48. Plaintiff completed high school and has past relevant work ("PRW") history as a medical clerk, medical assistant, office clerk, human resources clerk, and insurance clerk. Tr. 26, 163-69.

C.    The Administrative Proceedings

1.    Plaintiff's Testimony

In response to questioning by the ALJ, Plaintiff testified that during the relevant time period she had good days and bad days, but, at the time of the hearing, she could not work. Tr. 42-43. She described her most significant impairments as her headaches and her upper back and neck. Tr. 43-45. According to Plaintiff, her daily headaches had become worse over time. Tr.

---

[2] "Chiari malformations . . . are structural defects in the cerebellum, the part of the brain that controls balance." Nat'l Inst. of Neurological Disorders & Stroke, *Chiari Malformation Fact Sheet*, available at http://www.ninds.nih.gov/disorders/chiari/detail_chiari.htm#241883087 (last accessed on July 25, 2014).

2

43-44. Plaintiff testified that she had an implanted spinal cord stimulator which helped with her pain, but she also testified that she was unable to lift over five pounds with her right arm. Tr. 45. Plaintiff stated that her normal pain level was a six or a seven out of 10 (with 10 being the most severe) with her medication. Tr. 45. As far as her functional ability and limitation is concerned, Plaintiff testified that she could: (1) walk a half of mile before she has to stop due to swelling in her hands and feet; (2) sit for twenty to thirty minutes before needing to walk for five to ten minutes; and (3) could lift no more than five pounds. Tr. 45-46.

Plaintiff reported that even though she had surgery on her bladder the same month of the hearing, the surgery did not help and she continued to have frequent urination, burning, pain in the lower part of her stomach and back, and, sometimes, an inability to empty her bladder. Tr. 46. She also described weakness on the right side of her body in addition to impairment of her right shoulder. *Id*. At the conclusion of her testimony about her impairments, Plaintiff stated that she has been diagnosed with depression, anxiety, and obsessive-compulsive disorder. Tr. 47. She indicated that she was being treated by a psychiatrist for those conditions with medication, but not with therapy. *Id*. Plaintiff testified that her medications helped her, but made her sleepy, tired, and grouchy for an hour or two after taking them. *Id*. Insofar as her activities of daily living were concerned, Plaintiff testified that she lives with her spouse, a teenaged daughter, and a teenaged son. Tr. 48. She stated that she had a driver's license and could drive "maybe five to ten miles, and then I'm home." *Id*. Plaintiff also testified that she had "slowed down" in her abilities to perform household chores, but she indicated that her daughter helped her with the chores. *Id*.

In response to questioning from her attorney, Plaintiff testified that her former employers were "forgiving and willing to work with [her]" because she missed work "probably a day a week"

because of her surgeries, headaches, and pain. Tr. 49. She testified that when she was at work, she was a good employee even though she was "still having a lot of problems at work." *Id*. Plaintiff also testified that sometimes her pain was so bad that she passed out and that she agreed with her pain-management physician's opinion that her pain was so distracting that she would have to stop the task she was working on. Tr. 51. She also agreed that she would have to miss work "about four days a month" and would need to take ten to fifteen-minute breaks from work "every one to two hours." *Id*. Plaintiff testified that she was unable to lift anything with her right arm and could not push and pull with that arm alone, but could do some pushing and pulling using both arms. Tr. 52-53. She also testified that she had headaches "every day, all the time." Tr. 53.

2.      VE's Testimony

After the VE testified about Plaintiff's PRW, Tr. 56-57, the ALJ posed a series of hypothetical questions to the witness. Tr. 58-60. He asked the VE to assume a person who shared Plaintiff's vocational factors (age, education, and past work), who could perform light work with a sit-stand option with the following additional limitations: never use a ladder, rope, or scaffold; occasionally kneel, crouch, bend, balance, stoop; perform only simple, routine, and repetitive tasks. Tr. 58. The VE responded to the question and stated that such a person could not perform Plaintiff's past work, but that such a person other jobs in the national economy such as addressing clerk, weight tester, cashier or counter clerk, bench hand worker. Tr. 59. The ALJ then amended the hypothetical by adding the following additional limitations: avoiding moderate exposure to hazards and limiting the use of the right arm "to frequent." Tr. 60. The VE responded that a person with such limitations could perform all of the previous jobs he mentioned except for the bench hand worker job. *Id*. The VE added the jobs of order clerk and inspector and hand packer as ones

4

that a person with all the limitations mentioned in the hypothetical could perform. *Id.* Upon additional questioning by the ALJ in which he indicated he was asking about sedentary work, Tr. 60, the VE testified that there were jobs to fit those limitations such as order clerk, bench hand worker, table worker, hand sorter, and hand packer. Tr. 61. The ALJ then added limitations of not being able to "engage in work activity for eight hours a day, five days a week for a 40 hour work week . . . ," and the VE testified that there would be no jobs available for such a person. Tr. 61.

In response to Plaintiff's attorney's questioning, the VE testified that if a person had to miss four days of work a month or had to "take a break every one to two hours" and needed to "be out of the workstation for 10 to 15 minutes every one to two hours" because of their medical condition, that person would not be able to perform any gainful employment. Tr. 63. Finally, the VE testified that a person who was unable to maintain concentration, persistence, and pace for more than a third of a day because of pain and drowsiness would not be "job ready" and, thus, would be unable to work in the national economy. Tr. 64.

>        3.      The ALJ's Findings

In his October 13, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

>    1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
>    2.      The claimant has not engaged in substantial gainful activity since June 10, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
>    3.      The claimant has the following severe impairments: chiari malformation status post decompression and surgical revision, degenerative disc disease of the cervical spine, right shoulder adhesive capsulitis, interstitial cystitis, headaches, anxiety, obsessive-compulsive disorder, and depression (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). I specifically find the claimant has the sedentary work capacity to lift less than ten pounds occasionally and to sit for six of eight hours and walk or stand for two of eight hours. The claimant requires a sit-stand option where the claimant has to change positions during the workday every thirty minutes to one hour. The claimant can never climb ladders, ropes, or scaffolds and can occasionally kneel, crouch, bend, balance, and stoop. The claimant is limited to simple, routine, repetitive tasks. The claimant must avoid even moderate exposure to hazards, and use of the claimant's right (dominant) arm is limited to frequent.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on April 26, 1973 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 10, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 21-28.

## II.     Discussion

### A.     Legal Framework

#### 1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

1.   The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).   Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).   If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

Plaintiff asserts that the ALJ erred by not properly evaluating the RFC opinion from her treating pain-management physician and the diagnosis of her treating psychiatrist, by failing to adequately analyze the limiting effects of her interstitial cystitis, and by failing to adequately analyze her combination of impairments insofar as they might meet or medically equal a listing. Pl. Br. 3, ECF No. 17. The Commissioner contends that the ALJ's decision on all points is supported by substantial evidence and free from legal error. Def. Br. 1, ECF No. 18. Plaintiff responds that the ALJ's hypothetical questions to the VE show that he did not adequately analyze her interstitial cystitis and its effects on her combination of impairments. Pl. Resp. Br. 1-2, ECF No. 19.

1.     ALJ's Evaluation of Plaintiff's Treating Physician's Opinion

Plaintiff first asserts that the ALJ did not properly apply the applicable factors in 20 C.F.R. §§404.1527(c) and 416.927(c) and did not give sufficient weight to the RFC opinion provided by her treating pain-management physician, Dr. Rebecca Holdren, that Plaintiff has "disabling limitations due to her pain and medication side effects." Pl. Br. 4, ECF No. 17 (citing to Dr. Holdren's "Clinical Assessment of Pain" at Tr. 488-89) ("Dr. Holdren's RFC opinion"). The Commissioner argues that the ALJ properly applied the applicable law and found that Dr. Holdren's RFC opinion was not supported by the record as a whole. The Commissioner asserts that the ALJ's decision that Dr. Holdren's RFC opinion should not be afforded great weight is supported by substantial evidence. Def. Br. 10, ECF No. 18. As more fully discussed below, the court finds that the ALJ's determination of the weight to give Dr. Holdren's RFC opinion was not in accord with applicable law and does not appear to be supported by substantial evidence.

SSR 96-2p provides that if a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). When assessing a treating source's opinion, the ALJ shall consider the factors in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d at 654; 20 C.F.R. §§ 404.1527(c), 416.927(c). The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)).

An ALJ can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Further, in undertaking review of the ALJ's treatment of Plaintiff's treating physician, the court notes that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Determinations regarding whether a claimant is "disabled" and related legal conclusions are administrative determinations for the Commissioner and not for medical personnel. 20 C.F.R. §§ 404.1527(d), 416.927(d) (noting certain opinions by medical sources — such as being "disabled" or "unable to work" — are not afforded "special significance").

> When the ALJ's decision is not fully favorable to the claimant, the decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96–2, 1996 WL 374188, at *5 (S.S.A.).This specificity requirement is necessary because the reviewing court

> face[s] a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the records as a whole to determine whether the conclusions reached are rational.'

*Arnold v. Sec'y, HEW*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir.1974)). The Fourth Circuit has held that it is not necessary for an ALJ to recite

each factor concerning weight, so long as the "order indicates consideration of the all pertinent factors." *Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001).

In making his RFC finding at Step 3 in this case, the ALJ specifically stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Tr. 23. The ALJ's discussion of his reasons for the RFC finding he made includes both an analysis of Plaintiff's credibility and of the medical opinion evidence. Tr. 24-26. In connection with his analysis of Plaintiff's credibility in connection with her testimony and other statements about the nature and extent of her impairments and limitations, the ALJ summarized numerous treatment notes and medical reports in the record, including "radiographic and clinical findings" from Plaintiff's neurosurgeon, Dr. Kanos, which he noted were supportive of Plaintiff's complaints about right shoulder pain, Tr. 24, from state agency ophthalmology, urology, and psychological consultants, which he found supportive of some mild functional limitations arising from interstitial cystitis, depression, and anxiety, Tr. 25, and from Plaintiff's pain management physician's office, which he acknowledged showed "reduced sensation of the right upper extremity . . ." and that Plaintiff "has required pain management with strong medications including narcotics." *Id*. (citing to exhibits 3F/32, 37 and 3F; 15F; 20F, which are found in the official record at Tr. 304,   309, 273-312, 386-440, 469-87). However, referencing a cervical MRI and nerve studies finding "no nerve root compression" and "full strength of the right upper extremity, the ALJ concluded that "the evidence as a whole reveals radiographic and clinical findings and degree of functioning not consistent with disabling limitations." Tr. 24 (citing to exhibits 3F/33, 20F/7, 15F/38, 20F/4, which are found in the official record at Tr. 305, 475, 423,472). Finally, the ALJ specifically noted that "pain management records [from Dr. Holdren's

office]" showed that Plaintiff was able to take care of her children and husband, do some household chores, and her medications "were working and were tolerable" without excessive sedation. Tr. 25 (citing to exhibits 3F/30; 36F/1; 15F/9, 13, 20, 24, 29, 33, 46, 51, which are found in the official record at Tr. 302, 541, 394, 398, 405, 409, 414, 418, 431,436). Based on this discussion, the ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 24.

With specific regard to the ALJ's consideration of Dr. Holdren's RFC opinion that Plaintiff's "pain and medication side effects caused disabling limitations," the ALJ decided that it was "entitled to some weight." Tr. 26. The ALJ refused to give Dr. Holdren's RFC opinion "controlling weight" because he found that it was "inconsistent with the record as a whole, including Dr. Holdren's own records." *Id*. In support of this decision, he cited to portions of Dr. Holdren's records that he had referenced previously in connection with his analysis of Plaintiff's credibility where he found that Plaintiff "repeatedly reported good pain control" and where the reports indicated "no evidence for medication-induced reduced functionality or over-sedation. *Id*. (citing to exhibits 3F/30, 35; 15F/20, 24, 29, 33, 46, 51, which are found in official record at Tr. 302, 307, 405, 409,  414, 418, 431, 436). The ALJ did not mention the length of time and frequency that Plaintiff had been seeing Dr. Holdren (at least six years of approximately monthly visits), Tr. 274-313, 338-440, 545-628, nor did he mention what kind of "treatment relationship" Plaintiff and Dr. Holdren had. While the ALJ did briefly reference Dr. Holdren's speciality (pain management), Tr. 26, and briefly discuss the "supportability" and "consistency . . . with the record" of Dr. Holdren's RFC opinion by citing to several places in her medical records indicating

14

that Plaintiff's pain was improved by medication, that the medication did not over-sedate her, and that she was able to perform substantial functions of daily living, *id*., he did not expressly discuss any differences between Dr. Holdren's RFC opinion and the contents of her treatment notes, nor did he expressly compare the findings of any of the other medical providers regarding Plaintiff's functional limitations caused by her pain with those of Dr. Holdren. Furthermore, the ALJ did not discuss any of Dr. Holdren's massive volume of office notes, more fully discussed below, that lend support her opinion.

The Commissioner contends that the ALJ's one-paragraph reference to Dr. Holdren's RFC opinion and his summary of the some of the other medical reports in the record and citation to portions of Dr. Holdren's office notes about Plaintiff's medication working well without significant over-sedation are specific enough to indicate that the ALJ considered the proper factors in his evaluation. The Commissioner further argues that, although the ALJ is "required to consider [the factors listed in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)], there is no obligation that each factor be explicitly discussed in the ALJ's decision." Def. Br. 13, ECF No. 18. Citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the Commissioner states that "other circuits [besides the Fourth Circuit] have . . . held that ALJs need not engage in a mechanical discussion of all the factors considered when weighing a medical opinion." Def. Br. 13, ECF No. 18. However, neither the Commissioner nor Plaintiff cite to the considerable contrary authority from Circuits other than the Tenth. *See, e.g.*, *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (joining other federal courts in requiring the ALJ to consider § 404.1527(c)(2) factors when declining to give controlling weight to the treating physician's opinion); *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012) (detailed analysis of the weight given to a treating physician's opinion under the factors

15

required in absence of "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist"); *Newbury v. Astrue*, 321 F. App'x 16, 17 (2d Cir. 2009) (ALJ should "comprehensively set forth reasons for the weight assigned to a treating physician's opinion") (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). There is also considerable authority from this court that supports a finding that the ALJ's analysis of Plaintiff's treating physician's opinion in this case is inadequate under the applicable regulations and rulings. *See, e.g.*, *Vanartsdalen v. Colvin*, No. 5:12–2948–MGL, 2014 WL 798409 (D.S.C. Feb. 27, 2014) (reversing ALJ decision for improper application of treating physician rule where ALJ did not discuss the §404.1527(c)(2) factors); *Barringer v. Colvin*, No. , 2014 WL 798410 (D.S.C. Feb. 27, 2014) (same); *Coyle v. Colvin*, No. 9:12-724-RMG, 2013 WL 2099493 (D.S.C. May 14, 2013) (same; reversing and remanding where "[t]he ALJ fails to address most of these factors set forth in the Treating Physician Rule" and does not otherwise give good reasons for rejecting opinions); *Pringle v. Astrue*, No. 4:11–2152–RMG, 2013 WL 442256 (D.S.C. Feb. 05, 2013) (same); *Rowell v. Astrue,* No. 3:11-2523-MGL, 2012 WL 5873824 (Nov. 2, 2012) (same), *adopted*, 2012 WL 5873735 (D.S.C. Nov. 20, 2012). However, even if the ALJ is not required to expressly name and discuss each factor, the Agency has ruled that the ALJ's decision must nonetheless be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p. Moreover, those reasons must be "good reasons." *See Hendrix v. Astrue*, No. 1:09–01283–HFF, 2010 WL 3448624, *3 (D.S.C. Sept. 1, 2010) (finding no requirement of express discussion of regulation factors, but requiring good reasons for weight given medical opinions).

Aside from concluding that Dr. Holdren's RFC opinion is inconsistent some of the notations about medical effectiveness and lack of excessive sedation from the medication in her treatment records, the ALJ fails to specifically discuss the factors outlined in the regulations. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Dr. Holdren was Plaintiff's only treating pain-management physician for at least five years (from February 2006 through the August 2011 date of hearing and thereafter), and Plaintiff was examined in her office on an almost monthly basis through that period, Tr. 625-27, 721-35, but the ALJ did not mention that fact in his weight analysis for her opinion. Also, Dr. Holdren was the only "treating physician" to provide a formal RFC opinion for the ALJ to consider. *See* Tr. 490, 491, 492, 508, 509 (the non-examining consultant physicians who issued "case analysis" reports all referred to an RFC opinion prepared by another non-examining consultant, Alfred Moore, dated 7/28/2010, Tr. 529-466). Further, the medical information from "the record as a whole" that the ALJ appears to have relied upon to discount Dr. Holdren's RFC opinion – even though it was summarized by the ALJ in connection with his analysis of Plaintiff's credibility – does not actually contradict Dr. Holdren's RFC opinion.

First, as stated above, the other medical evidence was summarized in connection with the ALJ's consideration of the issue of Plaintiff's credibility and not in connection with his consideration of the weight to be given to her treating physician's RFC opinion. Second, even if the court were to find that the ALJ's summarization of the medical evidence could also have been done in connection with his consideration of the treating-physician issue, the summarized medical reports from Plaintiff's treating neurosurgeon and the state agency ophthalmology, urology, and psychological consultants were not inconsistent with Dr. Holdren's RFC opinion, which was

17

based on the nature and extent of functional limitation arising from Plaintiff's head, neck, and right side pain and resulting psychological problems and the medications used to treat those problems. Dr. Holdren did not opine that Plaintiff has neurological impairments, thus the MRI and nerve conduction studies referenced by the ALJ were not relevant to her RFC opinion based on recurrent, severe pain and resulting psychological impairment and the effects of the medication required to treat those problems. Nevertheless, as the ALJ notes in his claimant-credibility analysis, Plaintiff's treating neurosurgeon, Dr. Kanos', records do contain findings that are supportive of Dr. Holdren's RFC opinion such as painful abduction of the right shoulder, mildly reduced strength, limited range of motion of the right shoulder, and "cord compression at C5-6." Tr. 345-46. Also, Dr. Holdren's many office notes contain consistent notations of head, neck, and right shoulder pain described as "achy and deep," or "continuous, miserable, nagging" or "sharp, shooting, aching, and tingling" and noted as "severe" or "marked." *E.g.*, Tr. 274, 283, 287, 302, 436, 579, 605, 723-24, 729. Moreover, the fact that Plaintiff indicated at her some of her monthly appointments that her pain was reasonably well controlled, that the medications were well tolerated, and that she could perform minimal household-related tasks is not inconsistent with Dr. Holdren's RFC opinion, especially when the complete records showing consistent complaints of excessive pain, even with the medication, are considered.

For example, Dr. Holdren's office notes show that, throughout their lengthy treatment doctor/patient relationship, Plaintiff consistently complained of sustained, intense pain (VAS 10/10) that was only reduced by her medications somewhat to severe or marked pain (VAS 8/10 or 7/10). Tr. 274-75, 279, 283, 287, 292, 297, 302, 307, 388-89, 394-95, 400, 405, 409, 414, 418, 422,

425, 431, 436 , 729-30, 731.[3] The same office notes also show that Plaintiff consistently sought and tried additional treatments or procedures, short of surgery, such as trigger-point injections, cervical epidural steriod injections ("CESI"), a transcutaneous electrical nerve stimulation ("TENS") unit, and an implanted spinal cord stimulator to relieve or lessen her persistent pain. Tr. 422, 436, 596, 642-43. The ALJ did not mention any of this medical evidence in his decision; however, based on complete review of the record, it appears that, despite the ALJ's finding otherwise, the vast majority of Dr. Holdren's many office/treatment notes appear to be consistent with her RFC opinion.

While an ALJ may not be required to discuss every piece of evidence, in this case the record reveals significant evidence not addressed or acknowledged by the ALJ that does not support the ALJ's decision and evidence of impairment that does not appear to be diminished by Plaintiff's use of strong medication and other forms of pain therapy regardless of how well tolerated. *See, e.g., Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007) ("The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence."). Further, other than his broad, arguably boilerplate, statement that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p," Tr. 23, there is no indication that the ALJ actually applied the factors discussed above in evaluating the RFC opinion of Plaintiff's treating pain-management physician, other than conclusorily stating that the opinion is "inconsistent with other record as a whole, including Dr. Holdren's own

---

[3] Thus, it appears that the Commissioner "cherry-picked" the only three visits with Dr. Holdren (out of many others), Tr. 572, 579, 730 (follow up visits on 11/16/10, 1/20/11 and 2/17/11), wherein Plaintiff indicated pain levels of 5/10 and 6/10 to cite in her brief, Def. Br. 11, ECF No. 18, as  providing support for the ALJ's decision to give less than controlling weight to Dr. Holdren's RFC opinion.

records." Tr. 26. Additionally, as previously stated, the additional notes and records discussed above undermine the ALJ's reasons for discounting this opinion. While the court's notation of the additional evidence discussed above may not ultimately change the ALJ's decision, at the very least, the failure of the ALJ to address those portions of the records that appear to support Dr. Holdren's RFC opinion prevents the court from determining that the ALJ's decision to discount that opinion is supported by substantial evidence and consistent with controlling law.

Because the ALJ did not analyze the other medical evidence in the context of evaluating Dr. Holdren's RFC opinion, but rather in the context of his consideration of Plaintiff's credibility, he failed to explain how Dr. Holdren's RFC opinion was "not supported by the evidence as a whole." Tr. 24. Additionally, the ALJ failed to explain which of Dr. Holdren's treatment records were inconsistent with her opinion and he did not discuss the vast majority of her records that tend to support the opinion. *Id.* In sum, the ALJ failed to sufficiently explain the weight given to Dr. Holdren's opinion and the ALJ did not give "good reasons" for his decision. As a result, the court can not conclude whether that the ALJ's determination is supported by substantial evidence. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir.1986) (holding that failure by the ALJ to explain a decision makes it "simply impossible to tell whether there was substantial evidence to support the determination"). Accordingly, this case must be remanded to the Commissioner for further administrative proceedings, including, but not limited to, reconsideration and re-analysis of the medical opinion evidence insofar as it bears on Plaintiff's RFC.[4]

---

[4] In light of the remand directed in this case, no ruling is made on the merits of Plaintiff's contentions regarding the ALJ's refusal to credit the psychiatric records and diagnoses from Dr. Meyers, her treating psychiatrist. Pl. Br. 7-8, ECF No. 17. As noted by the Commissioner, Plaintiff did not significantly develop this argument in her brief. *See* Def. Br. 14 n.9, ECF No. 18. On remand, Plaintiff will have an opportunity to provide legible records from Dr. Meyers, if available, and the ALJ will have another opportunity to consider, analyze, and designate whatever weight he finds supportable to Dr. Meyers' opinions and/or diagnoses.

     2.      Remaining Points: ALJ's Analysis of Limiting Effects of Plaintiff's Interstitial Cystitis, and ALJ's Analysis of Plaintiff's Combination of Impairments and Its Meeting or Equaling a Listing

Because this case is being remanded for further consideration and analysis of the various medical opinions relating to the ALJ's decision on Plaintiff's RFC, the undersigned declines to address Plaintiff's remaining allegations of error. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on a particular ground and declining to address claimant's additional arguments). However, on remand the Commissioner should take into consideration Plaintiff's remaining allegations of error.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, without additional analysis of the appropriate weight to give Plaintiff's treating physician's RFC opinion, the ALJ did not properly apply the law, *Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987), and this court cannot determine if the ALJ's decision is supported by substantial evidence. *See Cook v. Heckler*, 783 F.2d 1168, 1173-74 (4th Cir. 1986). Accordingly, Commissioner's decision is reversed and the case is remanded to the Commissioner for further administrative action as set forth above.

     IT IS SO ORDERED.

July 28, 2014                        Kaymani D. West
Florence, South Carolina          United States Magistrate Judge